United States District Court
Southern District of Texas
**ENTERED**
May 28, 2024
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| Plaintiff/Respondent, | § | **CRIMINAL CASE NO. 4:19-CR-00918** |
| | § | **CIVIL CASE NO. 4:23-CV-01439** |
| **v.** | § | |
| | § | **CRIMINAL CASE NO. 4:21-CR-00477** |
| **JULIUS JOACHIM OHUMOLE,** | § | **CIVIL CASE NO. 4:23-CV-01440** |
| Defendant/Movant. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant/Movant Julius Joachim Ohumole's *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (the "Motion"), which he filed in both of his criminal cases. (4:19-CR-00918, Dkt. No. 61; 4:21-CR-00477, Dkt. No. 33). The United States of America (the "Government") has responded to the Motion, (Dkt. No. 80), and Ohumole has replied, (Dkt. No. 81).[1] For the reasons stated herein, the Motion is **DENIED**.

### I.    BACKGROUND

#### A.    CRIMINAL CASE NO. 4:19-CR-00918

In late 2018, Ohumole opened two bank accounts at Regions Bank (Regions) in Spring, Texas: the "Mars account" and the "JMW account." After opening the Mars account, Ohumole returned with an unidentified individual who posed as a real Regions customer, "S.S." Ohumole then added S.S. to the Mars account, gaining access to S.S.'s Home Equity Line of Credit (HELOC) account at Regions. A few days later, an unidentified individual called Regions and requested a transfer of $274,000 from S.S.'s

---

[1]    Unless otherwise noted, Docket Numbers refer to Criminal Case No. 4:19-CR-00918.

HELOC account to the Mars account. Four days later, a $200,000 transfer was initiated from S.S.'s HELOC account to the Mars account. The money transferred to the Mars account was subsequently transferred to a bank account in Hong Kong. Ohumole used an accomplice to impersonate a separate account holder at Regions, "C.H.," and add C.H. to the JMW account. Two transfers were then initiated from C.H.'s HELOC account with Regions to the JMW account for $480,000 and $325,000. That money was then transferred to international accounts in Taiwan and Dubai.

As a result of this bank fraud scheme, Ohumole was charged in Case No. 4:19-CR-00918 with one count of conspiracy to commit bank fraud and identity theft (Count One), four counts of aiding and abetting bank fraud (Counts Two through Five), and two counts of aggravated identity theft (Counts Six and Seven).

### B.    CRIMINAL CASE NO. 4:21-CR-00477

Around the same time, Ohumole created a bank account at Comerica Bank in Houston, Texas, under the name Kevin Wayne Smart. Ohumole sent an email to the Teton School District (Teton) in Driggs, Idaho, pretending to be a legitimate vendor and inducing Teton to send payments to his bank account. Teton subsequently wired $784,883.71 to Ohumole's Comerica account in an attempt to pay a vendor that provided services to Teton. As a result of this scheme, Ohumole was charged by criminal information with wire fraud in the District of Idaho under Case No. 1:21-CR-00225, which was later transferred to the Southern District of Texas and assigned Case No. 4:21-CR-00477.

C.    PLEA AGREEMENTS

Ohumole ultimately pled guilty in both cases pursuant to separate written plea agreements in which he waived his right to appeal or collaterally attack his conviction or sentence, except to raise a claim of ineffective assistance of counsel. Specifically, he pled guilty to Count Two in 4:19-CR-00918, which charged the $274,000 fraudulent transfer from S.S.'s HELOC account to the Mars account. He also waived his right to be charged by indictment in 4:21-CR-00477 and pled guilty to wire fraud. In exchange for his guilty plea, the Government dismissed the remaining counts in 4:19-CR-00918 and agreed to not oppose a request for a two-level downward adjustment under U.S.S.G. § 3E1.1(a); to move for a one-level downward adjustment under U.S.S.G. § 3E1.1(b), if applicable; to not object to a sentence at the low end of the Sentencing Guidelines range; and to not object to running the sentences in each case concurrently.

D.    PRESENTENCE INVESTIGATION REPORT

Based on the Guidelines' grouping rules, the Presentence Report (PSR, Dkt. No. 46) grouped both counts of conviction together and used the bank fraud count in 4:19-CR-00918 to calculate Ohumole's sentence because it resulted in the greatest offense level. The PSR assigned a base offense level of 7 pursuant to U.S.S.G. § 2B1.1(a)(1), then imposed five enhancements:

1)    16 levels because the offense involved an attempted loss of more than $1,500,000 but not more than $3,500,000, pursuant to U.S.S.G. § 2B1.1(b)(1)(I);

2)    2 levels because the offense involved sophisticated means and Ohumole engaged in or caused the sophisticated means, pursuant to U.S.S.G. § 2B1.1(b)(10)(C);

3)     2 levels because the offense involved the unauthorized transfer or use of any means of identification unlawfully to produce any other means of identification (his use of driver's licenses to create checking accounts), pursuant to U.S.S.G. § 2B1.1(b)(11)(C)(i);

4)     2 levels because his actions caused Regions, a financial institution, a loss of $1,279,000, pursuant to U.S.S.G. § 2B1.1(b)(17)(A); and

5)     2 levels because he was an organizer, leader, manager, or supervisor in any criminal activity that was not extensive and did not involve five or more people, pursuant to U.S.S.G. § 3B1.1(c).

After credit for acceptance of responsibility, Ohumole's total offense level was 28. With a criminal history category of I, his advisory Guidelines range was 78–97 months' imprisonment. The PSR identified several factors that would justify an upward departure under U.S.S.G. § 5K2.21, including to reflect the actual seriousness of the offense and that, absent his plea agreements, Ohumole would have served mandatory two-year prison sentences on each of the dismissed identity theft counts in 4:19-CR-00918.

Ohumole's counsel filed written objections to the PSR's enhancement for leadership role and suggestion of an upward departure. After the PSR was finalized, counsel filed a sentencing memorandum that re-urged his objections to the PSR and used character letters to support his plea for a lenient sentence.

E.   **Sentencing**

Defense counsel re-urged his objections at sentencing, but they were overruled. Regions and Teton both submitted requests for restitution under the Mandatory Victims Restitution Act of 1996 (MVRA); Regions requested $1,279,000, and Teton requested

$300,551.05.[2] The Court found that Ohumole was "responsible for $1,579,551.05" and ordered him to pay restitution in that amount. (Dkt. No. 73 at 8:6-7, 10:8). The Court adopted the PSR without change and sentenced Ohumole to 97 months' imprisonment in each case, to run concurrently, the top of his advisory Guidelines range.

Judgment was entered February 22, 2022. Ohumole did not appeal. He certified, under penalty of perjury, that he delivered his Section 2255 Motion to the prison mail system on February 7, 2023. It is timely.

## II.    OHUMOLE ALLEGATIONS

The Motion alleges that trial counsel was constitutionally ineffective because he:

1)    Failed to properly investigate and adequately object to the two-level sentencing enhancement for being a manager/supervisor;

2)    Failed to adequately object to and refute the loss amount attributed to Ohumole; and

3)    Failed to move for a downward departure based on Ohumole's lack of criminal history or history of violence, work experience, and family ties, and to avoid a sentencing disparity as compared to similar cases.

## III.    LEGAL STANDARDS

### A.    18 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise

---

[2]    While initially causing Teton a loss of $784,883.71, Teton subsequently recovered $484,332.66.

subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

### B.   INEFFECTIVE ASSISTANCE OF COUNSEL

An ineffective assistance of counsel allegation presented in a Section 2255 motion is properly analyzed under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 689 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his or her counsel's performance was both deficient and prejudicial. *Id*. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474–75 (5th Cir. 2001).

In reviewing ineffectiveness claims, "judicial scrutiny of counsel's performance must be highly deferential," and every effort must be made to eliminate "the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. An ineffective assistance claim focuses on "counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct[,]" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Id*. at 689–90. With regard to the prejudice requirement, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Id.* at 694. If the movant fails to prove one prong, it is not necessary to analyze the other. *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one."); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

## IV.   ANALYSIS

### A.   THE FIRST GROUND

Ohumole first claims his counsel was ineffective because he failed to properly investigate or object to the PSR's two-level enhancement under U.S.S.G. § 3B1.1(c) for being a manager/supervisor of the bank fraud scheme in 4:19-CR-918. He maintains the Government did not "state that movant directed or supervised those unknown participants" or "make any effort to show that movant benefitted more from the scheme that other participants," which "would have been immediately apparent to counsel if he had properly investigated the enhancements in the PSR . . . ." (Dkt. No. 62, p. 3). Ohumole further complains that counsel failed to cite any case law in his written objection to the PSR and failed to adequately prepare for oral argument at sentencing, which resulted in his objection being summarily dismissed by the Court.

Under *Strickland*, a petitioner "who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the [proceeding]." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) (citing *Alexander v. McCotter*, 775 F.2d 595 (5th Cir. 1985)). *See also United States v. Bernard*, 762 F.3d 467, 472 (5th Cir. 2014). Here, Ohumole fails to

allege with specificity what any additional investigation would have revealed regarding who was the real manager/supervisor of the bank fraud scheme and/or how it would have altered the outcome of his sentencing.

Ohumole's allegation is also contradicted by the record, which reflects that defense counsel lodged written objections to the Section 3B1.1(c) enhancement, arguing: it was mere speculation that Ohumole was a manager/supervisor of the bank fraud scheme; it was unknown who recruited whom and/or who organized or managed the scheme or others; it was just as plausible that the "unknown individuals" mentioned in the PSR oversaw the scheme and used Ohumole to assist them; and there was no evidence that Ohumole received or was entitled to receive most of the profits of the scheme. (Dkt. No. 44, pp. 1–2). Counsel re-urged his objection at sentencing, arguing that 99% of the money was moved out of the country and that Ohumole received instructions from other people whose names he did not know, but his objection was overruled. (Dkt. No. 73 at 4:17–5:2, 9:11-15). Ohumole does not identify what caselaw counsel should have cited in support of his objection.

Ohumole's assertion that counsel was ineffective at sentencing for failing to properly investigate and object to the PSR's manager/supervisor enhancement is conclusory and inconsistent with the record. His claim in the first ground is denied.

## B.   THE SECOND GROUND

In his Motion, Ohumole claims counsel was ineffective because he failed to adequately object to and refute the PSR's relevant conduct loss amount. Ohumole states that he only pled guilty to a loss amount of $274,000 in Count Two of 4:19-CR-00918, but

he was sentenced based on the total loss amount to Regions of $1,279,000 contained in the plea agreement. Without explanation, he states the loss amount should have been $579,000, which would have led to a 14-level enhancement under U.S.S.G. § 2B1.1(b)(1)(H) instead of the 16-level enhancement he received.

Ohumole takes a different position in his reply brief, arguing for the first time that his guilty plea was unknowing and involuntary because counsel failed to explain how the $1,279,000 loss amount referenced in the plea agreement in 4:19-CR-00918 would be used to calculate his sentence. He further claims his counsel estimated he would receive a sentence between "41-51 months maximum" and advised him to "just say 'yes your honor' to everything at the plea hearing," including whether anyone had coerced him into pleading guilty. (Dkt. No. 81, p. 6).

### 1.    Ineffectiveness as to Loss Amount

Ohumole was properly held responsible for losses caused to Regions under dismissed counts as relevant conduct in 4:19-CR-00918 because they were part of the same course of conduct or common scheme or plan involving Regions. *See* U.S.S.G. § 1B1.3(a)(2) & cmt. 5; § 3D1.3; *see also United States v. Ramirez*, 979 F.3d 276, 280 (5th Cir. 2020) ("Loss-amount calculations aren't limited to the offense of conviction."). At rearraignment, Ohumole admitted under oath that Regions had suffered a loss of $1,279,000 as a result of the bank fraud he had committed. (4:21-CR-00477, Dkt. No. 43 at 15:22–16:6). He further acknowledged under oath that he fraudulently caused Teton to transfer over $700,000 to his bank account, (*id.* at 7:14–8:11), although Teton was able to recover part of those funds. At sentencing, the Court found Ohumole responsible for

$1,579,551.05 in losses and ordered him to pay restitution in that amount. Considering only the losses to which Ohumole admitted responsibility in 4:19-CR-00918 and 4:21-CR-00477—and not relevant conduct related to his other fraudulent financial schemes[3]—the total $1,579,551.05 loss amount exceeds the $1,500,000 threshold for a 16-level enhancement under U.S.S.G. § 2B1.1(b)(1)(I). Because his objection would have been overruled, counsel was not ineffective for failing to object to this enhancement.

## 2.   Ineffectiveness as to Guilty Plea

As for Ohumole's claim that his plea was unknowing and involuntary because he was unaware of how the loss amount would affect his sentence, a guilty plea is considered knowing and voluntary so long as a defendant knows "the maximum prison term and fine for the offense charged." *Ables v. Scott,* 73 F.3d 591, 592 n. 2 (5th Cir. 1996) (citing *United States v. Rivera,* 898 F.2d 442, 447 (5th Cir. 1990)). So long as Ohumole "understood the length of time he might possibly receive, he was fully aware of his plea's consequences." *Barbee v. Ruth,* 678 F.2d 634, 635 (5th Cir. 1982).

Ohumole's signed and sworn plea agreement in 4:19-CR-00918 explained that the maximum sentence for bank fraud was 30 years' imprisonment and the maximum fine was $1,000,000. (Dkt. No. 41, ¶ 2). His signed and sworn plea agreement in 4:21-CR-00477 explained that the maximum sentence for wire fraud was 20 years' imprisonment and the

---

[3]    The PSR calculated a loss amount of $3,498,084.58, after including: (1) three checks totaling $823,997.36 intended for Expedi and Kobleco Construction Machinery, which Ohumole intercepted and deposited into his BBVA accounts that he opened with fraudulent IDs, and (2) a stolen check for $610,203.51 intended for Regas Contracting, which Ohumole stole and deposited into his Comerica Account that he opened with a fraudulent ID. (Dkt. No. 46, ¶ 40).

maximum fine was $250,000. (Dkt. No. 14, ¶ 2). Ohumole stated under oath that he

understood the maximum sentence and fine in each case. (Dkt. No. 73 at 5:19-25, 10:11-

13). Both plea agreements further provided:

> Defendant is also aware that any estimate of the possible
> sentencing range under the Sentencing Guidelines that he
> may have received from his counsel, the United States, or the
> Probation office, is a prediction, not a promise, and such
> estimate **did not induce his guilty plea** and is binding on
> neither the United States, the Probation Office, nor the Court.

(4:19-CR-00918, Dkt. No. 41, ¶ 6; 4:21-CR-00477, Dkt. No. 14, ¶ 6 (emphasis in original)).

Ohumole's sworn statements in his plea agreements and in open court are entitled

to a strong presumption of truthfulness. *See United States v. Lampaziane*, 251 F.3d 519, 524

(5th Cir. 2001) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Indeed, the Fifth Circuit

affords "great weight to the defendant's statements at the plea colloquy." *United States v.

Cothran*, 302 F.3d 279, 283–84 (5th Cir. 2002). On this record, the Court finds that Ohumole

was aware of his potential sentencing exposure before he plead guilty, and his plea in

each case was knowing and voluntary.

For the reasons stated above, Ohumole's claims in the second ground are denied.

## C.   THE THIRD GROUND

The Motion claims that defense counsel was ineffective at sentencing because he

failed to move for a downward departure based on Ohumole's lack of criminal history or

history of violence, his extensive work experience as a software engineer, his family ties,

and to avoid a sentencing disparity as compared to similar cases. Ohumole's reply brief

adds that counsel should have argued for leniency based on the conditions of

confinement due to COVID-19. Ohumole says he explicitly told his counsel to present these facts to the Court, but counsel failed to do so.

### 1.      Downward Departure

A departure is a "term of art" referring to a non-Guideline sentence under 18 U.S.C. § 3553(b)(1) and Chapter 5, Part K of the Guidelines. Ohumole has not identified any provision of U.S.S.G. §§ 5K1 or 5K2 that could have supported a downward departure. In his sentencing memorandum, defense counsel discussed the possibility of Ohumole debriefing with the Government, which may have qualified him for a downward departure for substantial assistance under U.S.S.G. § 5K1.1, (Dkt. No. 51 at 2), however, Ohumole does not mention this or explain why he chose not to debrief.

### 2.      Downward Variance

In the alternative, the Court construes the third ground to include a claim that counsel should have moved for a downward variance based on the sentencing factors set forth in 18 U.S.C. § 3553(a). While he did not move for a below-Guideline sentence, counsel's sentencing memorandum did "request[] a sentence at the low end of the guidelines, which according to the plea agreement the government would not oppose." (Dkt. No. 51, p. 7). The memorandum included letters from Ohumole's family and friends and listed numerous courses he had completed while incarcerated at the GEO facility. (*Id.*, Exh. 1–3). Counsel further emphasized at sentencing that Ohumole had "only one criminal history point given for one prior . . . ." (Dkt. No. 73 at 7:20-21).

Detailed information regarding Ohumole's personal history, family history, and previous work experience as a software engineer was included in his PSR. (Dkt. No. 46,

¶¶ 77–81, 86-90). The Court was also aware of the conditions of confinement due to COVID-19, given the numerous motions for compassionate release it received during the pandemic. After considering all this information—as well as the PSR's identification of factors supporting an upward departure—the Court imposed a sentence at the top of Ohumole's advisory Guidelines range. He has not shown that a request by counsel for a below-Guideline sentence would have altered this result.

As for his claim that counsel should have argued for a downward variance based on "the huge disparity between the sentence recommended in the PSR and the actual sentences handed down in similar cases," (Dkt. No. 62, p. 3), Ohumole has cited no examples of similarly situated defendants who received lower sentences. *See* 18 U.S.C. § 3553(a)(6) ("The court, in determining the particular sentence to be imposed, shall consider . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.").

The Court finds Ohumole has not shown his counsel was ineffective for failing to move for a downward departure or variance at sentencing, or that he suffered prejudice as a result. His claim in the third ground is denied.

## V.     CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). The Section 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." RULE 11, § 2255 RULES.

A certificate of appealability (COA) "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This standard requires a Section 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon *Slack*, 529 U.S. at 483–84).

Based on the above standards, the Court concludes that Ohumole is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. *See Jones*, 287 F.3d at 329.

## VI.   CONCLUSION

For the foregoing reasons, Ohumole's motion under 28 U.S.C. § 2255, (4:19-CR-00918, Dkt. No. 61; 4:21-CR-00477, Dkt. No. 33), is **DENIED**, and he is further **DENIED** a Certificate of Appealability.

It is SO ORDERED.

Signed on May 27, 2024.

DREW B. TIPTON
UNITED STATES DISTRICT JUDGE